UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ANTHONY NEWMAN,

    Plaintiff,

v.

ANDREW MOULTRIE, *MD*,
OLADIPO OLALEYE, *RNP*, and
WEXFORD,[1]

    Defendants.

Civil Action No. TDC-18-0457

## MEMORANDUM OPINION

Plaintiff Anthony Newman, an inmate presently incarcerated at the Patuxent Institution ("Patuxent") in Jessup, Maryland, filed a civil action against Defendants Dr. Andrew Moultrie, Oladipo Olaleye, and Wexford Health Sources, Inc. ("Wexford"), alleging medical neglect and medical malpractice. Newman claims that since 2013, he has developed lumps on his head, face, neck, and body, which Defendants have failed to treat properly. Pending before the Court is Defendants' Motion to Dismiss or Alternatively for Summary Judgment, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

Newman has a history of a skin condition that causes "bumps," "papular lesions," "pimples," or "acne" on his face and body. Medical Records 6, 15, 25, 54, Defs.' Mot. Ex. 1, ECF No. 8-3. He first reported bumps on his face on August 29, 2013, was prescribed medication, and

---

[1] The Clerk shall amend the docket to reflect the full name of Defendant Wexford Health Sources, Inc.

was told to follow up if the condition worsened or failed to improve within 15 days. Newman did not complain again about skin issues until 2015.

During Newman's periodic physical examination on April 27, 2015, Dr. Moultrie noted that "[n]o impressive skin lesions are present." *Id.* at 13. From June through August 2015, Defendant Olaleye, a registered nurse practitioner, saw Newman on four separate occasions for scattered bumps and lesions on his face and for blisters around his mouth. Olaleye prescribed various medications on June 3, 2015, June 29, 2015, and July 23, 2015 for the bumps and lesions. On August 26, 2015, Dr. Moultrie saw Newman for lesions on his head and neck and diagnosed him with acne and folliculitis. Dr. Moultrie prescribed topical agents and antibiotics.

When Newman returned to see Olaleye on October 20, 2015, he reported that the "skin eruptions" were not responding to medication. *Id.* at 25. At that time, a pustule culture was sent to the lab for bacterial testing and came back negative. Olaleye examined Newman six times in October, November, and December 2015 regarding the skin lesions on his face and prescribed various topical medications. On November 11, 2018, Olaleye recommended a consultation with a dermatologist. On November 23, 2015, Olaleye followed up with doctors regarding the recommendation.

On December 3, 2015, Newman had a telemedicine consultation with Dr. Temegen, the Regional Medical Director, who, along with Dr. Moultrie, recommended a punch skin biopsy. The biopsy was originally scheduled for January 2016, but on January 18, 2016, the doctor at the onsite surgery clinic, concluding that the lesions did not appear cancerous, recommended that Newman see a dermatologist first and only return if there was a concern that the lesions were malignant. On April 21, 2016, Newman reported for the punch biopsy, but he had no active lesions at the time. He was instructed to return when he had a new lesion, "preferably on [his] chest." *Id.* at 48.

2

On May 19, 2016, Newman returned with one lesion on his face, but he was unable to get a puncture biopsy because the lesion was "not mature." *Id.* at 52. Newman next returned on July 8, 2016 with pimple-like lesions on his face. Noting that prior treatment had not been successful, Olaleye requested an infectious disease evaluation rather than another dermatology consultation.

On September 25, 2016, Newman had a telemedicine consultation with an infectious disease physician. That doctor diagnosed Newman as having "[r]ecurrent folliculitis" and proposed "long term suppressive therapy with Doxycycline 50 to 100 mg daily and use of antiseptic soap." *Id.* at 59. Newman next visited Olaleye regarding the skin lesions on November 22, 2016 and stated that there had been no improvement. Newman demanded to see a dermatologist and refused "to take any more antibiotics." *Id.* at 61.

On December 13, 2016, Newman saw Olaleye for an unscheduled visit due to an abscess or boil close to the left nasal bridge. Due to the size and location of the abscess, Olaleye determined that a puncture biopsy would be difficult. Nevertheless, when the medical providers sought to conduct such a biopsy to assess whether further dermatology consultation was needed, Newman refused to sign an authorization form and stated that he would probably not take any medication ordered for him.

On May 31, 2017, during a scheduled visit, Newman reported that the treatment in place did not stop the recurrent boils and requested a biopsy of the skin. Newman did not return until December 13, 2017, when he stated that he had had outbreaks since his last visit, but "did not come up to medical because he felt that nothing new would be done." *Id.* at 71. Dr. Moultrie ordered a consultation with a dermatologist.

On February 15, 2018, a single lesion located on Newman's face was biopsied. On March 8, 2018, Newman was informed of the biopsy results, which revealed "epidermal hyperplasia with

mild keratosis, basal keratinocytes with reactive atypia and focal ulcerations." *Id.* at 75. A dermatology consultation was ordered.

On July 9, 2018, Newman was seen at the Johns Hopkins Outpatient Center. Following the examination, he was diagnosed with "severe acne and folliculitis," which was determined to be non-cancerous. Johns Hopkins Records 2, Defs.' Reply Ex. 1, ECF No. 14-1. Newman was prescribed Accutane and directed to return to Johns Hopkins monthly for monitoring, re-prescription of medication, and blood work.

On February 11, 2018, Newman filed this case in this Court, alleging claims of medical neglect and medical malpractice. He seeks compensatory damages and a consultation with a physician outside the prison system.

## DISCUSSION

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that (1) Newman has not alleged sufficient facts to state a plausible claim for relief; (2) the record evidence establishes that Defendants did not violate Newman's Eighth Amendment rights because they were not deliberately indifferent to a serious medical need; (3) Newman cannot demonstrate that Wexford is liable under a theory of supervisory liability under § 1983; and (4) Defendants are immune from suit.

I. **Legal Standards**

Defendants have entitled their motion as a Motion to Dismiss or Alternatively for Summary Judgment. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts must

treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d).

Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Although Newman has asserted that he needs additional discovery in order to address the Motion, he has submitted his own affidavit, photographs, and other documentary evidence. Although additional discovery and evidence may be needed to resolve certain factual disputes, such as disputes over the specific medical condition from which Newman suffers, or the degree of success of the medical treatment provided to Newman, these and other factual issues need not be resolved to decide this case under the applicable legal standards. *See infra* part III. The Court therefore concludes that there is no need for additional discovery to allow Newman to contest the Motion and will construe it as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. Medical Malpractice and Neglect

Newman's Complaint specifically alleges "medical neglect" and "medical malpractice," without specifying any particular statutory cause of action. Compl. 2, ECF No. 1. To the extent that Newman pleads a state law tort claim, this Court may not review it because Newman has not established subject matter jurisdiction. This Court may review a state law claim only pursuant to diversity jurisdiction, specifically, if the dispute is between citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a) (2012). Newman does not specify the amount of damages he seeks and thus fails to satisfy the amount-in-controversy requirement. Newman also fails to demonstrate that the citizenship of the parties is diverse. The diversity statute "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Newman has not alleged the citizenship of any of the parties, and it is highly likely that Newman, who was convicted and

incarcerated in Maryland, and Dr. Moultrie and Olaleye, both of whom work in Maryland, are citizens of Maryland. Because diversity jurisdiction has not been established and likely cannot be established, any state law claim for medical malpractice or negligence must be dismissed.

Even if diversity jurisdiction could be established, Newman's medical malpractice claim would be subject to dismissal unless he can demonstrate that he had first presented it to the Maryland Health Claims Arbitration Board. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-02 to 3-2A-04 (West 2011); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (holding that this requirement applies to medical malpractice claims filed in state or federal court). The Complaint does not state that Newman presented this claim to the Board. Thus, any state law medical malpractice and neglect claims must be dismissed.

### III. Eighth Amendment

To the extent that Newman's claim of medical neglect and malpractice could be construed as a federal constitutional claim under 42 U.S.C. § 1983, he likely has asserted that Defendants violated the Eighth Amendment to the United States Constitution for deliberate indifference to a serious medical need. Mere negligence or malpractice, however, does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, to the extent that Newman asserts that Defendants acted with negligence or committed medical malpractice, he fails to state a valid Eighth Amendment claim.

Even if the Complaint's deficiencies were corrected, the Court would nevertheless find that, on the record presented, summary judgment must be granted in favor of Defendants. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See id.* Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to

7

either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, Dr. Moultrie has asserted that in his medical opinion, Newman's diagnosed skin condition is "common, benign," and "typically managed by an internal medicine physician" rather than a specialist. Moultrie Aff. ¶ 4, Defs.' Mot. Ex. 2, ECF No. 8-4. Although the medical records

either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, Dr. Moultrie has asserted that in his medical opinion, Newman's diagnosed skin condition is "common, benign," and "typically managed by an internal medicine physician" rather than a specialist. Moultrie Aff. ¶ 4, Defs.' Mot. Ex. 2, ECF No. 8-4. Although the medical records

either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, Dr. Moultrie has asserted that in his medical opinion, Newman's diagnosed skin condition is "common, benign," and "typically managed by an internal medicine physician" rather than a specialist. Moultrie Aff. ¶ 4, Defs.' Mot. Ex. 2, ECF No. 8-4. Although the medical records

suggest a more severe form of this condition, the Court need not resolve any factual dispute regarding the seriousness of his condition. Even assuming that Newman's skin condition was sufficiently severe that it created a serious medical need for Eighth Amendment purposes, the record does not support a finding that Defendants acted with deliberate indifference to that need. The medical records establish that on the occasions when Newman complained to the medical staff about his skin condition, he was routinely seen and evaluated by Defendants and other providers. From 2015 to 2018, Newman had 32 medical visits to address his skin condition. Newman was provided several forms of medical treatment, including antibiotics, topical ointments, and antiseptic soap. He received consultations with several specialists, including an infectious disease specialist and the regional medical director. He was scheduled for a skin biopsy on January 4, 2016, but the procedure did not occur at that time, as he did not have a suitable lesion to test. Although Newman correctly asserts that the course of treatment did not resolve his skin condition, or at least that there is a genuine issue of fact on the efficacy of the treatment, the degree of success of the treatment is not a material question because the lack of success does not establish deliberate indifference. *See Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) (stating that an official who actually knows of a substantial risk to inmate health may be found free from liability if the response to the risk was reasonable, "even if the harm was not ultimately averted"). Where Defendants and other medical providers gave regular attention to Newman's condition, provided medical treatment, and consulted with specialists, the Court concludes that the record, even viewed in the light most favorable to Newman, does not support a finding that they acted with deliberate indifference to his medical needs.

Finally, the Court notes that the post-Complaint treatment, although not directly relevant on the question of deliberate indifference prior to the filing of this case, supports the Court's

conclusion. After he filed his Complaint but before process was served on Defendants, Newman received the skin biopsy and a dermatology consultation that he requested. Then, he was examined by a physician at a Johns Hopkins Outpatient Center in Baltimore, Maryland, who concurred with Dr. Moultrie's diagnosis of folliculitis and determined that there was no cancer present. The fact that the Johns Hopkins physician's diagnosis was consistent with Dr. Moultrie's diagnosis further illustrates that Defendants' medical treatment, while not fully successful, was not so deficient as to constitute deliberate indifference.

Accordingly, the Court concludes that there is no genuine issue of material fact whether Defendants acted with deliberate indifference to a serious medical need. The Court will therefore grant summary judgment on any Eighth Amendment claim asserted by Newman. The Court need not and does not address Defendants' remaining claims for relief.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively for Summary Judgment is granted. A separate Order shall issue.

Date: December 18, 2018

THEODORE D. CHUANG
United States District Judge